UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------X

MATTHEW B. KREPPS,

                    Plaintiff,                    07 Civ. 9884

        -against-                                 OPINION

EDWARD REINER, INSEAD, INSEAD
NORTH AMERICA and MICHAEL C.
MILLER,

                    Defendants.

---------------------------------X

A P P E A R A N C E S:


        Plaintiff Pro Se

        MATTHEW B. KREPPS
        200 Riverside Blvd., #410
        New York, NY  10069

        Attorneys for Defendants
        INSEAD, INSEAD NORTH AMERICA, INC.
        and MICHAEL C. MILLER

        STEPTOE & JOHNSON, LLP
        750 Seventh Avenue, Suite 1900
        New York, NY  10019
        By:  Michael C. Miller, Esq.
             Evan Glassman, Esq.
             Lenor C. Marquis, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/24/08



**Sweet, D.J.**

Defendants Insead ("Insead") and Insead North America
("INA") (collectively, the "Corporate Defendants") have moved
under Fed. R. Civ. P. 4(h), 12(b)(1-3), and 12(b)(5-6) to
dismiss the First Amended Complaint ("FAC") of plaintiff pro se,
Matthew B. Krepps ("Krepps" or the "Plaintiff"). Defendant
Michael C. Miller ("Miller") has moved separately to dismiss the
claims asserted against him pursuant to Fed. R. Civ. P.
12(b)(6). Upon the conclusions set forth below, the motions are
granted.

Krepps, a former professor at the Massachusetts
Institute of Technology ("MIT") and at Insead has prodigiously
litigated his relationship with Insead, a French business
school, with mixed results. From what follows it appears that
the time to terminate this controversy may be near at hand.

## I. PRIOR PROCEEDINGS

Krepps has initiated four actions arising out of the
same nucleus of facts relating to essentially the same activity,
i.e. Krepps' participation in the development of online course
materials for Insead. The instant action is his fifth related

1

civil action. In Krepps' first action, The Economist's Advocate, LLC v. Cognitive Arts Corp., No. 01 Civ. 9468 (RWS) (S.D.N.Y.) (the "EA Action"), the Economists Advocate ("EA") of which Krepps was the president and sole shareholder, won a jury verdict on his claim for quantum meruit, i.e. compensation for EA's contribution to certain online course materials. Krepps v. Insead, No. 04 Civ. 3260 (the "Krepps I Action"), was dismissed without prejudice by this Court when Krepps withdrew his opposition to Insead's motion to dismiss on the grounds of forum non conveniens. See Krepps v. Insead, No. 04 Civ. 3260 (RWS), 2004 WL 2066598, at *3 (S.D.N.Y. Sept. 16, 2004). Krepps v. Reiner, No. 05 Civ. 107 (the "Krepps II Action"), was dismissed by this Court on grounds of improper service and lack of personal jurisdiction over Insead. See Krepps v. Reiner, 414 F. Supp. 2d 403 (S.D.N.Y. 2006). Krepps filed a fourth action in the District of Massachusetts, Krepps v. Insead, No. 06 Civ. 10781 (the "Krepps III Action"), which the Honorable Rya Zobel dismissed for lack of personal jurisdiction. See Decl. of Michael C. Miller ("Miller Decl."), Ex. T.

The instant action was filed on November 8, 2007, naming Edward Reiner ("Reiner") as defendant. The FAC adding Insead, INA, and Miller was filed on February 25, 2008.

2

The FAC alleges federal diversity jurisdiction and federal question jurisdiction based on allegations of copyright infringement.  By way of background, the FAC contains lengthy allegations describing the relationship between Krepps, Insead, and EA, including Krepps' employment by Insead from March 1997 to May 3, 2001, Krepps' negotiations with Reiner, and Insead's activities in New York.  FAC ¶¶ 13-45. The FAC then alleges certain communications by Miller and Insead in 2006 and 2007, FAC ¶¶ 46-55, and ten causes of action:  (1) fraud against Insead and Reiner, FAC ¶¶ 56-61; (2) copyright infringement against Reiner and Insead, FAC ¶¶ 62-66; (3) defamation against Miller and Insead, FAC ¶¶ 67-72; (4) intentional interference with business advantage and contract against Insead and Miller, FAC ¶¶ 73-79; (5) breach of contract against Insead, FAC ¶¶ 80-83; (6) unjust enrichment against Insead, FAC ¶¶ 84-87; (7) quantum meruit against Insead, FAC ¶¶ 88-89; (8) constructive discharge and breach of good faith and fair dealing against Insead, FAC ¶¶ 90-93; (9) reverse passing off and unfair competition against Insead, FAC ¶¶ 94-98; and (10) conversion against Insead.  FAC ¶¶ 99-101.

The instant motions were marked fully submitted on April 30, 2008.

3

## II.  DISCUSSION

In addressing the present motion, the Court is mindful
that Krepps is proceeding pro se and that his submissions are
held to "less stringent standards than formal pleadings drafted
by lawyers . . . ."  Hughes v. Rowe, 449 U.S. 5, 9 (1980)
(quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)).  The
courts "construe the pleadings of a pro se plaintiff liberally
and interpret them to raise the strongest arguments they
suggest."  Fuller v. Armstrong, 204 Fed. App'x 987, 988 (2d Cir.
2006); see also Lerman v. Bd. of Elections in City of New York,
232 F.3d 135, 139-40 (2d Cir. 2000) ("Since most pro se
plaintiffs lack familiarity with the formalities of pleading
requirements, we must construe pro se complaints liberally,
applying a more flexible standard to evaluate their sufficiency
than we would when reviewing a complaint submitted by
counsel.").  However, the courts will not "excuse frivolous or
vexatious filings by pro se litigants," Iwachiw v. State Dep't
of Motor Vehicles, 396 F.3d 525, 529 n.1 (2d Cir. 2005), and
"pro se status 'does not exempt a party from compliance with
relevant rules of procedural and substantive law.'"  Triestman
v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006)
(quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)).

4

## A.    The Rule 12 Standard

On a motion to dismiss pursuant to Rule 12, all
factual allegations are accepted as true, and all inferences are
drawn in favor of the pleader.  Mills v. Polar Molecular Corp.,
12 F.3d 1170, 1174 (2d Cir. 1993).  The issue "is not whether a
plaintiff will ultimately prevail but whether the claimant is
entitled to offer evidence to support the claims."  Villager
Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995)
(quoting Scheuer v. Rhodes, 416 U.S. 232, 235-36 (1974)).
"[O]nce a claim has been stated adequately, it may be supported
by showing any set of facts consistent with the allegations in
the complaint."  Roth v. Jennings, 489 F.3d 499, 510 (2d Cir.
2007) (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1969
(2007)).

## B.    The Action Is Dismissed as to Insead
for Lack of Personal Jurisdiction

In the Krepps II Action, Insead successfully moved to
dismiss for lack of personal jurisdiction on the same grounds
asserted in this action.  See Krepps v. Reiner, No. 05 Civ. 107
(RWS), 2005 WL 1793540 (S.D.N.Y. July 27, 2005); Krepps, 414 F.
Supp. 2d 403.  The doctrine of collateral estoppel precludes

5

Krepps from relitigating the same personal jurisdiction issue raised in the Krepps II Action. See Schick v. Oyer, No. 07 Civ. 629 (RJA), 2008 WL 4501935, at *1 (W.D.N.Y. Sept. 29, 2008) (holding that doctrine of collateral estoppel precluded plaintiff from relitigating personal jurisdiction issue); Moscato v. MDM Group, Inc., No. 05 Civ. 10313 (KMW), 2008 WL 2971674, at *3 (S.D.N.Y. July 31, 2008) (same); 1 Five 0, Inc. v. A. Schulman, Inc., No. 99 Civ. 354 (JTE), 2000 WL 744003, at *3 (same); see also Pohlmann v. Bil-Jax, Inc., 176 F.3d 1110 (8th Cir. 1999) (discussing application of doctrine of collateral estoppel to issue of personal jurisdiction); see generally, Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 n.9 (1982) ("It has long been the rule that principles of res judicata apply to jurisdictional determinations-both subject matter and personal.").

"Under federal law, a party is collaterally estopped from relitigating an issue if a four-part test is met: (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." Boguslavsky v. Kaplan, 159 F.3d 715, 720 (2d Cir. 1998)

(internal quotation marks and footnote omitted). "[U]nder New York law, collateral estoppel prevents a party from relitigating an issue . . . . (1) identical to an issue already decided (2) in a previous proceeding in which that party had a full and fair opportunity to litigate," and where (3) "the issue that was raised previously [is] decisive of the present action." Curry v. City of Syracuse, 316 F.3d 324, 331 (2d Cir. 2003) (internal quotation marks omitted). There is "some doubt" as to whether state or federal law governs the collateral estoppel effect of a federal court's decision on a subsequent diversity action. See Indus. Risk Insurers v. Port Auth. of N.Y. & N.J., 493 F.3d 283, 288 (2d Cir. 2007). However, the instant dispute does not require exposition of this delicate issue. Applying either standard, Krepps is estopped from relitigating the issue of personal jurisdiction here. See id.

In the Krepps II Action, Krepps argued that Insead was amenable to suit under New York's corporate presence doctrine and under its long arm statute. See N.Y. C.P.L.R. §§ 301, 302(a)(1). In the alternative, Krepps alleged that the Court had jurisdiction over Insead as a tortfeasor under N.Y. C.P.L.R. § 302(a)(2). In July 2005, the Court held that jurisdiction was lacking under sections 301 and 302(a)(1) because, despite his allegations that "Insead is registered to do business in New

York, maintains a bank account in New York, and has sold its
work product in New York," Krepps failed to provide any facts to
support his allegations "that Insead conducted purposeful
business activities within New York from which this suit arises
. . . ." Krepps, 2005 WL 1793540, at *5. The Court held that
jurisdiction was lacking under section 302(a)(2) because Krepps
failed to make the necessary showing that Insead was physically
present in New York while committing a tort. Id. The motion to
dismiss was therefore granted, but Krepps was given thirty days
to submit any factual material or initiate jurisdictional
discovery.

In February 2006, after Krepps had been given
additional time for jurisdictional discovery, Insead moved for
entry of an order of dismissal. Krepps argued that the Court
had personal jurisdiction over Insead on several bases: the
residence of an Insead professor in New York, an account at a
New York bank, attendance at MBA fairs in New York, fundraising
activity in New York, the sale of a copy of Insead's Industry
Scan course to a consumer in New York, and Insead's
relationships with INA, the Citigroup Foundation, a company
called Cognitive Arts, and an organization called WIMBA. See
Krepps, 414 F. Supp. 2d 403.

8

"When a plaintiff files two actions against the same
defendant in the same district, the personal jurisdiction issue
is generally identical unless (1) subsequent events create a new
legal situation, (2) the plaintiff alleges new material facts
that could not have been previously discovered in the exercise
of due diligence, or (3) the second complaint alleges a new
cause of action that provides a different basis for personal
jurisdiction." Moscato, 2008 WL 2971674, at *3 (internal
quotations and alterations omitted).

With respect to the third factor, Krepps incorrectly
assumes that the state's long arm statute is not applicable to
his copyright claims. In both diversity and federal question
cases, the courts' inquiry as to personal jurisdiction begins
with the forum state's long arm statute. See Bensusan Rest.
Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997); see also Pearson
Educ., Inc. v. Shi, 525 F. Supp. 2d 551, 555 (S.D.N.Y. 2007)
("Because the Lanham Act and Copyright Act do not provide for
national service of process, New York's long arm statute . . .
governs the instant action.").

Krepps also asserts that new facts establish the
existence of personal jurisdiction over Insead. Specifically,
Krepps alleges that since the filing of the Krepps II Action,

9

Insead has opened an office in New York City and has sold an
infringing product in New York through its website. See Pl.
Opp. 25. Krepps also argues that there has been a change in New
York case law with regard to internet sales. Id.

The opening of the office does not create a new legal
situation. Krepps has failed to present any facts disputing
Inseads' showing that it was INA, not Insead, that opened an
office in New York City in 2007. See Decl. of Mary Lee Rieley
¶¶ 9-12. The Court's February 2006 opinion held that Insead's
relationship with INA was not sufficient grounds for the Court
to exercise personal jurisdiction over Insead. Krepps, 414 F.
Supp. 2d at 406-07.

The sale of an allegedly infringing product in New
York through Insead's website is a more difficult issue. In the
Krepps II Action, Krepps asserted that Insead "sold at least one
copy of the Industry Scan course to a consumer in New York," but
the facts established that Insead did not solicit business in
New York, but rather that the course was purchased as a make-up
session for a course taking place in France. Id. at 410. Here,
Krepps has once again alleged that a copy of the Industry Scan
course has been sold through Insead's website to a New York
customer, this time a Kevin Gass. See Pl. Opp. at 33; Aff. of

10

Kevin Gass. According to Insead, this is the only online sale of the course that has ever been made in New York. See Decl. of Jill Huret ¶ 7-8. Insead accuses Krepps of instigating the purchase himself in order to manufacture personal jurisdiction in this Court, citing circumstantial evidence that Krepps did just that in the Krepps III Action in Massachusetts, where his claims against Insead were dismissed for lack of personal jurisdiction by summary order. See Miller Decl. ¶¶ 45-47, Exs. R, S & T. In support of its contention, Insead notes that the two products purchased by Gass are the same products purchased in Massachusetts, and that Gass only accessed the Industry Scan product during the first day of his 90-day license. Krepps does not deny that he directed Gass's purchase, but rather argues that Insead's affidavits cannot be considered on a motion to dismiss, and that the issue is irrelevant.

To make a prima facie showing of personal jurisdiction, Krepps is required to make "averments of fact that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over [Insead]." Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999) (quotation and alterations omitted). Although courts have held that the purchase of goods through a party's website can establish personal jurisdiction under New York's long arm

statute, see, e.g., Pearson Educ., 525 F. Supp. 2d at 556 (holding that plaintiffs' allegations that defendants consummated multiple sales of their copyrighted books with New York customers through the Internet constituted an adequate showing of defendants' purposeful contacts with New York); Rubin v. City of New York, No. 06 Civ. 6524 (HB), 2007 WL 950088, at *3 (S.D.N.Y. Mar. 29, 2007) (holding that there was an 'articulable nexus' between plaintiff's request for declaratory relief, defendant's counterclaim for trademark infringement, and plaintiff's online internet business contacts with New York residents over an 'active' website where New York customers purchased allegedly infringing merchandise to establish personal jurisdiction), plaintiffs are not permitted to "manufacture" personal jurisdiction over defendants by orchestrating an in-state web-based purchase of their goods. See Chloe, Div. of Richemont N.A., Inc. v. Queen Bee of Beverly Hills, LLC, 571 F. Supp. 2d 518, 524-25 (S.D.N.Y. 2008) (collecting cases).

When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001). In deciding a pretrial motion to dismiss for lack of personal jurisdiction, the Court has "considerable

procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981). Here, an evidentiary hearing has not been held, and therefore Krepps need only make a prima facie showing of jurisdiction through pleadings and affidavits in order to defeat the motion to dismiss. Druck Corp. v. Macro Fund (U.S.) Ltd., 102 Fed. App'x 192, 194 (2d Cir. 2004); CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986).

Krepps has failed to make the necessary prima facie showing of personal jurisdiction over Insead due to his failure to dispute his responsibility for the purchase by Gass. Some factual showing in this regard is necessary in light of the affirmations presented by Insead and the history of Krepps' litigation in this Court and the District of Massachusetts. However, in light of Krepps' pro se status, and to ensure that Krepps has a full and fair opportunity to litigate this issue, he will be granted twenty days to submit any factual material or to initiate any jurisdictional discovery.

## C. **INA Is Dismissed as a Party**

13

Krepps has alleged no claims against INA, which is
therefore dismissed as a party.

## D. **Counts I, II, and V-X Are Precluded by the EA Action**

Insead argues that the doctrine of res judicata bars
Krepps' present claims based on his interests in intellectual
property related to the subject course materials because it was
established in the EA Action that Krepps assigned all of those
interests to EA. Alternatively, Insead argues that Krepps
should be judicially estopped from arguing the contrary, as
Krepps consistently took the position throughout the EA Action
that he had assigned his intellectual property interests in the
subject course materials to EA.

> The preclusive effect of a judgment is defined by
> claim preclusion and issue preclusion, which are
> collectively referred to as 'res judicata.'
> Under the doctrine of claim preclusion, a final
> judgment forecloses successive litigation of the
> very same claim, whether or not relitigation of
> the claim raises the same issues as the earlier
> suit.     Issue preclusion, in contrast, bars
> successive litigation of an issue of fact or law
> actually litigated and resolved in a valid court
> determination essential to the prior judgment,
> even if the issue recurs in the context of a
> different claim.     By precluding parties from
> contesting matters that they have had a full and
> fair opportunity to litigate, these two doctrines
> protect against the expense and vexation
> attending multiple lawsuits, conserve judicial

14

        resources, and foster reliance on judicial action
        by minimizing the possibility of inconsistent
        decisions.

Taylor v. Sturgell, 128 S. Ct. 2161, 2171 (2008) (quotations,

alterations and footnote omitted).


        In the EA Action, EA sued Insead and others to

recover, inter alia, the value of its intellectual property

rights in certain "Course Materials" that it alleged to have

developed with Insead during the winter of 1999 through April

2001, and alleged to have assigned to Insead and Insead OnLine.

See Economist's Advocate, LLC v. Cognitive Arts Corp., No. 01

Civ. 9468 (RWS), 2004 WL 728874, at *1 (S.D.N.Y. Apr. 6, 2004);

Miller Decl., Ex. D ¶¶ 33-39. The jury awarded EA $250,000,

plus interest, on its quantum meruit claim. See Economist's

Advocate v. Cognitive Arts Corp., No. 01 Civ. 9468 (RWS), 2004

WL 2650906 (S.D.N.Y. Nov. 22, 2004).


        The general rule is that "one is not bound by a

judgment in personam in a litigation in which he is not

designated as a party or to which he has not been made a party

by service of process." Hansberry v. Lee, 311 U.S. 32, 40

(1940). There are a number of exceptions to this rule, however,

three of which are relevant here. First, nonparty preclusion

may be justified on a variety of pre-existing substantive legal

relationships, such as preceding and succeeding owners of
property, bailee and bailor, and assignee and assignor.  Taylor,
128 S. Ct. at 2172.  Second, a nonparty is bound by a judgment
if he assumed control over the litigation in which the judgment
was rendered.  Id. at 2173.  Third, a party bound by a judgment
may not avoid its preclusive force by relitigating through a
proxy.  Id.

### 1.    *Krepps is Bound by the Judgment in the EA Action*

        The EA Limited Liability Company Agreement lists
Krepps as the only "Member" of the company.  Miller Decl. ¶ 7,
Ex. B, Schedule A.  Krepps was also EA's "Manager," pursuant to
the terms of the EA Limited Liability Company Agreement, which
gave him "full and plenary" authority to exercise "all powers of
the Company."  Id. Ex. B at § 5.1(a).  No person other than the
Manager had any right or authority to act for or bind EA.  Id.
As Manager, Krepps also held the title of "President" of EA.
Id.  In simplest of terms, EA was Krepps' company.  See Decl. of
Evan Glassman, Ex. A at 85:25; 112:8; 113:11; 157:15; 259:23;
300:6; 442:7, 442:10; 600:3; 711:14; and EA's employees were
Krepps' employees.  Id. at 80:4; 83:17; 91:16; 99:4; 107:7.

16

Among the enumerated powers of EA's Manager was the authority to "bring or defend, pay, collect, compromise, arbitrate, resort to legal action, or otherwise adjust claims or demands of or against the Company." Id. at § 5.1(a)(xiii). The record from the EA Action established that Krepps personally financed the EA Action and is EA's sole creditor. Supplemental Declaration of Evan Glassman ¶¶ 22-23, Ex. N. The record demonstrates that Krepps controlled and participated extensively in the EA Action.

The record from the EA Action also shows that Krepps assigned to EA "all rights, title and interest, including the Intellectual Property (as defined below), subsisting in the "Industry Scan," "Targeting Innovations," "Finance" and "Accounting" courses to the extent created or conceived by [Krepps}, including all course modules comprising such courses . . . ." Miller Decl. Ex H, Ex. A. At trial, EA sought, pursuant to its quantum meruit claim, to recover from Insead the "fair value of the intellectual property rights in the Course Materials that it assigned to Insead . . . ." Miller Decl. Ex. D (EA Complaint), at ¶ 34. EA won a jury verdict on the strength of Krepps' representations that EA owned all of the intellectual property that Krepps had ever held in the courses, and was entitled to be paid by Insead for the value of this

17

property. See Miller Decl. at ¶¶ 16, 24-26, Ex. A at 39 ("If there's no contract, we're going to be asking you for a reasonable amount for [Krepps'] 18 months of full-time labor on this project.").

Krepps now alleges he, not EA, provided course development services directly to Insead. Krepps argues that he cannot be bound by the result of the EA Action because the jury held against him on his contract claim and the contract he sued on included reference to the assignment of his intellectual property to EA. Krepps asserts that the jury therefore determined that the assignment was ineffective. He also argues that res judicata is inapplicable because he was not in privity with EA, regardless of his level of involvement in or control of the EA Action, and because his interests conflicted with EA's (though he does not specify how his interests diverge, it is presumably insofar as Krepps disputes the validity of the assignment).

Krepps' arguments are unavailing. He testified in the EA Action that the subject course materials were created by EA, and that EA's and Krepps' efforts were one and the same. The record also demonstrates that Krepps assigned whatever interest he had in the course materials to EA. Krepps disputes this, but

has offered no evidence that supports his contentions. That EA's contract claim was dismissed and contained an affirmation that Krepps had assigned his interest in the course materials to EA does not render the assignment invalid. The validity of Krepps' assignment of his interest in the course materials was never questioned in the EA Action.

Krepps' argument that his interests were in conflict with the interests of EA is likewise unavailing. It has already been shown that Krepps owned and controlled EA. He is not permitted to seek a double recovery against Insead by disputing the validity of the assignment of his personal interest in the course materials to EA.

## 2. Claims V, VI and VII Are Dismissed as Precluded by the EA Action

The EA Action asserted claims for breach of contract, quantum meruit, and unjust enrichment. Miller Decl. Ex. D. "Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." Taylor, 128 S. Ct. at 2171. Krepps' fifth

19

(breach of contract), sixth (unjust enrichment) and seventh (quantum meruit) claims must therefore be dismissed.

### 3. Claims I, II, VIII, IX and X Are Subject to Issue Preclusion and Therefore Dismissed

Through EA, Krepps has been fully compensated for his work on the subject course materials by virtue of EA's receipt of $250,000 plus interest in connection with the Judgment in the EA Action. "Issue preclusion . . . bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." Id. In addition to the claims addressed in the previous section, Krepps has asserted a number of claims that seek the same relief, i.e. compensation for Krepps' and EA's alleged work on the subject course materials.

Krepps' first cause of action, for fraud, alleges that Insead and Reiner entered into a "General Release and Termination Agreement" with Krepps but that Insead "intended not to perform its obligations under the contract that it signed." See Am. Complaint ¶¶ 22-29; 56-61. This is the same contract upon which EA's contract claims were based. Krepps' fraud claim

relies on the same allegations made in the EA Action,
supplemented by characterizations of facts learned in discovery
and events that transpired during the trial.  See id. ¶¶ 24-28.
Krepps had a full opportunity to litigate these issues during
the EA Action, and his fraud claim must therefore be dismissed.

Krepps' Eighth Cause of Action, for "Constructive
Discharge and Breach of Good Faith and Fair Dealing," alleges
that "Insead prevented [Krepps] from enjoying the fruits of
[his] contract with Insead by effectively forcing [him] to
resign from Insead by using improper means."  FAC ¶ 91.  This
claim is also duplicative of Krepps' contract claim, and is
therefore precluded.

Krepps' second cause of action, for "Copyright
Infringement and Contributory or Vicarious Infringement" asserts
that the Insead "Industry Scan" course infringes Krepps' United
States copyright, registered March 9, 2005.  See FAC ¶¶ 29-42;
62-66.  Krepps' ninth cause of action, for "Reverse Passing Off
and Unfair Competition," alleges that Insead "passed off the
Industry Scan course in New York and misrepresented it as
Insead's own" and that "constituent elements of [Krepps']
copyrighted work are continuously displayed on Insead's website
for everyone in New York, customers and non-customers alike."

21

Id. ¶ 96. Krepps' tenth cause of action, for conversion,
alleges that "Insead sought and obtained a protective order from
Judge Robert W. Sweet that prevented me from selling my
intellectual property as contained in the Industry Scan course."
Id. ¶ 100. Krepps' asserted intellectual property rights in the
"Industry Scan" course were adjudicated in the EA Action. The
second, ninth, and tenth causes of action must therefore be
dismissed.

## E. The Third Cause of Action, for Libel, Slander and Defamation, Is Dismissed

Krepps' third cause of action alleges that in March
2007, Miller's law firm, Piliero Goldstein Kogan & Miller, LLP
("PGKM"), published on its website information about Krepps
containing Krepps' name and referred to him as a "former
teacher." FAC ¶ 68. Krepps alleges that the published
materials also referred to two of the Krepps actions that Insead
won, but contained no reference to the EA Action that Insead
lost, and contained a reference link to pdf files on PGKM's
website for only two of the three legal decisions referenced in
the website entry. Id. ¶ 69. Krepps has also alleged that the
materials incorrectly claimed that PGKM and Miller had defeated
Plaintiff in the three lawsuits, even though PGKM was only

22

involved in one lawsuit. Id. ¶ 70. Krepps has alleged that he monitored the website regularly, but only learned of the materials from a then client in March 2007 and that this client has not done further business with Krepps since then. Id. ¶ 71. Krepps has also alleged that on April 12, 2006, "Insead sent an unsolicited defamatory and slanderous letter to one of [Krepps'] clients for the sole purpose of harming [Krepps] and destroying that client relationship." Id. ¶ 77.

"Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander." Idema v. Wager, 120 F. Supp. 2d 361, 365 (S.D.N.Y. 2000). "Under New York law, a plaintiff must establish five elements to recover in libel: (1) a written defamatory statement of fact concerning the plaintiff, (2) publication to a third party, (3) fault (either negligence or actual malice depending on the status of the libeled party), (4) falsity of the defamatory statement, and (5) special damages or per se actionability (defamatory on its face)." Celle v. Filipino Reporter Enters. Inc., 209 F.3d 163, 176 (2d Cir. 2000); see also Daniels v. Provident Life and Cas. Ins. Co., No. 00 Civ. 668E (SC), 2002 WL 31887800, at *3 (W.D.N.Y. Dec. 4, 2002).

23

"At the motion to dismiss stage, where the allegations must be accepted as true and all reasonable inferences must be drawn in the claimant's favor, see Conley [v. Gibson, 355 U.S. 41, 46 (1957)], the Court's task is clear: to determine whether the statements at issue are 'reasonably susceptible of a defamatory meaning.'" Treppel v. Biovail Corp., No. 03 Civ. 3002 (PKL), 2005 WL 2086339, at *7 (S.D.N.Y. Aug. 30, 2005) (quoting Armstrong v. Simon & Schuster, Inc., 649 N.E.2d 825, 829 (1985)).

Krepps has failed to state a claim for defamation. With respect to the first allegedly defamatory statement, that Krepps is a "former teacher" at Insead, Krepps alleges that he "joined the faculty at Insead" in March 1997, and that he was a "faculty member." FAC ¶¶ 13-14. Krepps also alleges that he resigned from Insead on May 3, 2001. Id. ¶ 17. Krepps has therefore failed to allege that the characterization of Krepps as a "former teacher" is false.

Nor is the second alleged defamatory statement, a reference to the two suits won by Insead without mentioning the suit Insead lost, sufficient basis for Krepps' claim. "[A] plaintiff may state a colorable claim for 'defamation by implication' based on misleading omissions or false suggestions

24

emanating from truthful statements." Oluwo v. Hallum, 851
N.Y.S.2d 59 (Table), 2007 WL 2701286, at *3 (N.Y. Sup. 2007);
see also Armstrong, 649 N.E.2d at 829 (recognizing a cause of
action for "defamation by implication" based on "false
suggestions, impressions or implications arising from otherwise
truthful statements"). Neither the New York Court of Appeals
nor the Court of Appeals for the Second Circuit has articulated
the proper standard to be applied to a motion to dismiss a claim
for "defamation by implication." See Levin v. McPhee, 119 F.3d
189, 196 n.5 (2d Cir. 1997); Armstrong, 649 N.E.2d at 829-30;
see also Emamian v. Rockefeller Univ., No. 07 Civ. 3919 (DAB),
2008 WL 4443824, at *6 (S.D.N.Y. Sept. 25, 2008). However,
where a plaintiff fails to identify any misleading omissions or
factual suggestions, dismissal is appropriate. See, e.g.,
Oluwo, 2007 WL 2701286, at *3.


"Allegedly defamatory statements should be construed
'not with the close precision expected from lawyers and judges
but as they would be read and understood by the public to which
they are addressed.'" Pavlica v. Behr, No. 04 Civ. 8152 (DC),
2006 WL 1596763, at *7 (S.D.N.Y. June 12, 2006) (quoting DiBella
v. Hopkins, No. 01 Civ. 11779 (DC), 2002 WL 31427362, at *2
(S.D.N.Y. Oct. 30, 2002)). "Though courts have cautioned
against straining to interpret such writings in their mildest

and most inoffensive sense to hold them nonlibelous, it is
equally clear that courts should not strain to interpret
statements as defamatory." Id. (quotation and alteration
omitted). The Court cannot interpret the PGKM website's
reference to two Krepps Actions without mention of the EA Action
as defamatory without giving it "a strained or artificial
construction." Id., quoting Aronson v. Wiersma, 483 N.E.2d
1138, 1139 (N.Y. 1985).

The statement that PGKM was involved in all three
successful actions against Krepps, even if false, is not a
statement of fact about the Plaintiff, and is therefore not
actionable.

Finally, Krepps has failed to identify the allegedly
"defamatory and slanderous" statements in the alleged
unsolicited letter sent to one of his clients. Such generalized
allegations of defamation are not sufficient to state a claim.

The defamation claim is dismissed.

## F. The Claim for Intentional Interference with Prospective Business Advantage and Intentional Interference with Contract Is Dismissed

Krepps alleges: (1) that Insead sought and obtained a protective order from this Court that prevented Krepps from selling the Industry Scan course, FAC ¶ 74; (2) that Miller sent numerous threats to Krepps that interfered with his ability to do business with a number of individuals and entities, Id. ¶ 75; and (3) that Insead sent an "unsolicited defamatory and slanderous letter" to one of Krepps' clients, who then ceased doing business with him. Id. ¶ 77.

The tort of intentional interference with contract requires: (1) the existence of a valid contract, (2) defendant's knowledge of that contract, (3) defendant's intentional procurement of the breach of that contract, and (4) damages caused by the breach. G.K.A. Beverage Corp. v. Honickman, 55 F.3d 762, 767 (2d Cir. 1995). Krepps has failed to allege the existence of a valid contract.

In order to claim intentional interference with a prospective business relationship, a plaintiff "must specify some particular, existing relationship through which plaintiff would have done business but for the allegedly tortious behavior." Allcar Motor Parts Corp. v. Fed.-Mogul Corp., No. 96 Civ. 4419 (JFK), 1998 WL 671448, at *6 (S.D.N.Y. Sept. 29, 1998); Kramer v. Pollack-Krasner Found., 890 F. Supp. 250, 258

(S.D.N.Y. 1995). Plaintiff's first asserted basis for this claim, the issuance of the protective order, fails to do so. It must also be alleged that defendant directed some activities toward the third party and convinced the third party not to enter a business relationship with the plaintiff. Fonar Corp. v. Magnetic Resonance Plus, Inc., 957 F. Supp. 477, 482 (S.D.N.Y. 1997); see also G.K.A. Beverage, 55 F.3d at 768. The issuance of a protective order by the Court cannot be the basis for such a claim. The claim against Miller must be dismissed for the same reason. Krepps has alleged that Miller contacted only Krepps, not any third parties.

With respect to the alleged "defamatory and slanderous" letter, Plaintiff is not permitted to dress up a defamation claim as a claim for intentional interference with a prospective economic advantage. See Pasqualini v. MortgageIT, Inc., 498 F. Supp. 2d 659, 669-70 (S.D.N.Y. 2007) (holding that claim for intentional interference with a prospective business advantage based wholly on dissemination of negative statements about plaintiff resulting in harm to her business reputation was in essence a defamation claim, and therefore subject to statute of limitations applicable to such claims). The Court has already held that Krepps' allegations with regard to the letter are insufficient to state a cause of action for defamation.

The claim for intentional interference with
prospective business advantage and intentional interference with
contract is dismissed.

## III. CONCLUSION

Based upon the conclusions set forth above, the
motions of Insead, INA and Miller are granted, and the First
Amended Complaint is dismissed.

Leave is granted to serve a Second Amended Complaint
within 20 days.

It is so ordered.

**New York, N.Y,**
**November 2 4, 2008**

ROBERT W. SWEET
U.S.D.J.